# CLAUDE MOTT BROUILLARD AND MEI-WA CHENG BROUILLARD, Appellants/Defendants

## v.

# DLJ MORTGAGE CAPITAL, INC., Appellee/Plaintiff

S. Ct. Civil No. 2014-0063

Supreme Court of the Virgin Islands

October 28, 2015

CLAUDE M. BROUILLARD and MEI-WA CHENG BROUILLARD, *Pro se*, St. Thomas, USVI.

ELISE CATERA, ESQ., Hunter & Cole, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 28, 2015)

SWAN, *Associate Justice*. Appellants, Claude Brouillard and Mei-wa Cheng Brouillard (hereinafter the "Brouillards"), entered into a loan agreement with FirstBank Puerto Rico for a mortgage. After the Brouillards defaulted on the loan, FirstBank filed an action for foreclosure, followed by a motion for summary judgment. The Brouillards filed an answer and counterclaims, alleging that FirstBank engaged in negligent and intentional misrepresentation and breach of contract. The Superior Court granted summary judgment to FirstBank, the predecessor in interest to appellee DLJ Mortgage Capital, Inc., on the foreclosure action and on the Brouillards' counterclaims, which were respectively barred by the statute of limitations and the statute of frauds. For the reasons elucidated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The Brouillards purchased a home on the island of St. John in January 2003. At the time of purchase, the property, known as parcel 6B-12 St. Quacco & Zimmerman, consisted of a 576 square-foot guest house and a cistern for the main residence. For three years, the Brouillards made improvements on the property before seeking financing for further development of the property and to purchase an additional parcel of land.

On or about September 22, 2006, the Brouillards applied for a $500,000 loan with FirstBank. In response, on October 5, FirstBank faxed the Brouillards a *Uniform Good Faith Estimate of Closing Cost and Truth and Lending Statement* disclosing the fees and interest associated with their potential loan. In a November 6, 2006 counteroffer, FirstBank denied the Brouillards' application for a $500,000 loan, and instead offered a loan for $352,500. On November 9, 2006, FirstBank sent an email to the Brouillards enumerating various financing options for the loan. On November 16, 2006, the Brouillards accepted and executed a promissory note in the amount of $352,500 with a fixed interest rate of

8%. The note required monthly payments of $2,586.52 with the full debt due and payable on January 1, 2037. The parties closed on the $325,500 mortgage loan on December 11, 2006. The note was secured by a first-priority mortgage on Parcel No. 68-12 Estate St. Quacco and Zimmerman Nos. 11 and 12 Coral Bay Quarter, St. John U.S. Virgin Islands.

In February 2007, the Brouillards returned to FirstBank seeking additional funding for construction on the main property. The Brouillards were informed that approval of an additional loan was unlikely, and they did not proceed with a new loan application. The Brouillards then applied to refinance their existing loan with FirstBank in 2008, which the bank also rejected. The Brouillards later defaulted on the note and mortgage by failing to make the monthly payments, after having made payments on the note from February 2007 to September 2010. On November 9, 2010, FirstBank notified the Brouillards of their default on the loan. When the Brouillards failed to cure the default, FirstBank filed an action for debt and foreclosure on April 15, 2011, demanding judgment for all sums due under the December 11, 2006 note, including the principal sum of $339,326.38, accrued interest in the amount of $9,405.93, late charges in the amount of $4,676.69, charges for checks rejected for insufficient funds in the amount of $90.00, together with continuing accruing interest, post-judgment interest, costs, and attorneys' fees.

FirstBank then filed a motion for summary judgment in its debt and foreclosure action on March 16, 2012. On June 25, 2012, the Brouillards filed an answer and counterclaims asserting negligent misrepresentation, intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, and breach of contract. (J.A. 336-40), (Brouillard Br. 11). The trial court granted FirstBank's motion for summary judgment in an opinion and accompanying order dated September 24, 2013, and entered September 26, 2013. The Brouillards timely appealed, but this Court dismissed the appeal without prejudice to its refiling within 60 days of the conclusion of Claude Brouillard's bankruptcy case or the lifting of the stay of proceedings by the federal court with jurisdiction over his bankruptcy case. *Brouillard v. DLJ Mortgage Capital, Inc.*, 60 V.I. 763, 767 (V.I. 2014). They timely refiled their appeal on October 3, 2014.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals

arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final judgment within the meaning of 4 V.I.C. § 32(a) is one that "disposes of all the claims submitted to the Superior Court for adjudication." *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012). Because the Superior Court's order granted summary judgment to FirstBank Puerto Rico, the predecessor in interest to the mortgage now owned by appellee DLJ Mortgage Capital, Inc., thus adjudicating all of the claims of each party, it is a final order within the meaning of section 32.

## III. STANDARD OF REVIEW

"The Superior Court's grant of summary judgment is subject to plenary review by this Court." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014) (citing *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013)). "In conducting this review, we apply the same test as the Superior Court." *Id.* at 379. "Summary judgment is a drastic remedy, [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." *Id.* at 379-80. "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Joseph v. Hess Oil V.I. Corp.*, 54 V.I. 657, 664 (V.I. 2011) (*quoting Williams v. United Corp.*, 50 V.I. 191, 194-95 (V.I. 2008)). "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* Finally, we analyze the Superior Court's grant of summary judgment "in the context of the substantive law governing the cause of action." *Machado*, 61 V.I. at 380 (citing *Perez*, 59 V.I. at 528).

## IV. DISCUSSION

### A. The Superior Court correctly granted summary judgment to FirstBank on the debt and foreclosure action.

The Brouillards contend that the Superior Court should have determined that FirstBank is equitably estopped from seeking summary judgment because of its breach of the implied covenant of good faith and

fair dealing, unclean hands, and intentional and negligent misrepresentations. In their answer and counterclaims, the Brouillards also state that an action for foreclosure cannot proceed when the underlying contract is void.

■ The Virgin Islands' debt and foreclosure statute, as set out in title 28 of the Virgin Islands Code, states in relevant part:

> A lien upon real property . . . whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby, by an action of an equitable nature. In such action, in addition to the judgment of foreclosure and sale, if it appears that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also adjudge a recovery of the amount of such debt against such person or persons.

28 V.I.C. § 531(a). Therefore, in order to "prevail on a foreclosure claim, the plaintiff must show (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note." *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 229 (quoting *Thompson v. Fla. Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009)).

Here, the Superior Court correctly determined that the Brouillards admitted to accepting and executing a promissory note with FirstBank on Parcel No. 6B-12 Estate St. Quacco and Zimmerman. (J.A. 338.) Furthermore, the Superior Court found that the Brouillards defaulted on the loan on or about September 1, 2010 (J.A. 336), which they conceded before the Superior Court and in this appeal. (J.A. 140, 338.) And, the Brouillards never cured the default under the promissory note any time before the Superior Court entered judgment.

However, the Superior Court erred in its analysis of the third element — whether the bank was authorized to foreclose on the loan. Contrary to the court's conclusion, the Brouillards did challenge the bank's legal authority to foreclose, arguing that their contract was void because FirstBank misrepresented the loan contract terms, which fraudulently induced them to execute the loan note and mortgage. (J.A. 143-45); (Brouillard Br. 12). Despite this error, we may still affirm the Superior

Court's grant of summary judgment if the Brouillards failed to establish a genuine issue of material fact regarding the legal authority of the bank to foreclose. V.I.S.CT.R. 4(i) (harmless error is not grounds for reversal); *Machado*, 61 V.I. at 392.

■ In order for the Brouillards' contract with the bank to be void, it would have to be "illegal or contrary to public policy." *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, 983 P.2d 1016, 1018 (1999), or there would have to be evidence that there was no meeting of the minds over the terms of the contract itself, proving that a contract was never formed. *Nature's 10 Jewelers v. Gunderson*, 2002 SD 80, 648 N.W.2d 804, 807 (2002). In contrast, a voidable contract is a contract challenged by one of the parties because of "fraud, misrepresentation, or mistake." *Ockey v. Lehmer*, 2008 UT 37, 189 P.3d 51, 56 (2008). Thus, the Brouillards' allegation that the bank fraudulently induced them into executing the loan note and mortgage is really an argument that their contract is voidable.

■■ As we explained in *Burd v. Antilles Yachting Servs., Inc.*, 57 V.I. 354, 362 (V.I. 2012), a voidable contract can be ratified by the allegedly injured party. Specifically, a party cannot "avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation . . . if, after the circumstances that made it voidable have ceased to exist, he manifests to the other party his intention to affirm it or acts in a manner inconsistent with disaffirmance." *Id.* Thus, even assuming that FirstBank misrepresented the contractual loan terms to the Brouillards — despite the lack of any evidence — the contact would only be voidable, not void, and would be "capable of being ratified." *Id.* Ratification occurs when "the party entering into the contract . . . intentionally accepts the benefits under the contract, remains silent, acquiesces in the provisions of the contract for any considerable length of time after opportunity is afforded to avoid it or have it annulled, or recognizes its validity by acting upon it." *Id.* Since the Brouillards admit that they were informed in February 2007 by FirstBank that they would not receive additional financing without an additional loan application, and they did not object to the validity of the note and mortgage and continued making payments from February 2007 to September 2010, they ratified the contact — even if, hypothetically, FirstBank misrepresented the contract terms.

Thus, there is no genuine issue of material fact in dispute regarding the validity of the mortgage contract, because it is undisputed that the Brouillards ratified their contract after learning that they would not

receive additional financing from FirstBank. And, while the Brouillards failed to produce any evidence to establish a genuine issue of material fact in dispute regarding the legal authority of FirstBank to foreclose on their property, FirstBank provided both a copy of the signed Mortgage Note (Supp. App. 380-81), and an affidavit filed by Dina Perry, FirstBank's the Consumer Lending and Collections Manager, stating the amount owed by the Brouillards (Supp. App. 376-78). This evidence supports the FirstBank's argument that it is legally authorized to foreclose on the property under the terms of the promissory note.

Here, the Superior Court correctly held that the Brouillards acknowledged the first and second elements required to grant summary judgment to FirstBank on its foreclosure action — that they executed the contract, receiving the funds pursuant to the terms of the note, and that they subsequently defaulted. Although the Superior Court erred in concluding that the Brouillards conceded the third element — the legal authority of FirstBank to foreclose — it was a harmless error because the Brouillards failed to establish a genuine issue of material fact in dispute. With the required elements satisfied for the foreclosure action, we conclude that the Superior Court correctly determined that the Brouillards failed to raise any genuine issue of material fact; therefore, summary judgment was proper.

### B. The Superior Court correctly granted summary judgment on the Brouillards' tort claims because they were barred by the statute of limitations.

The Brouillards allege that FirstBank's misrepresentations induced them to abandon other financing options and enter into the December 11, 2006 transaction. However, as the Superior Court correctly determined, the Brouillards' negligent and intentional misrepresentation claims are time-barred due to the applicable statute of limitations.

Here, the statute of limitations for the Brouillards' tort claims was two years. 5 V.I.C. § 31(5)(A).[1] Both misrepresentation claims are based on

---

[1] 5 V.I.C. § 31(5) (A) states:
Civil actions shall only be commenced within the periods prescribed below after the cause of action shall have accrued

. . . .

acts which occurred between 2006 and 2007, when they were denied funding for an additional loan.

■■ The time for any statute of limitation begins to run when the cause of action accrues. Accrual takes place upon on the "occurrence of the essential facts that give rise to that cause of action." *Anthony*, 58 V.I. at 227 (citation and internal quotation marks omitted.). However, under the "continuing violations" doctrine, " 'when a [claim] involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the [wrongful] conduct ceased.' " *Id.* at 227 (quoting *Bluebeard's Castle, Inc. v. Hodge*, 51 V.I. 672, 685 (D.V.I. App. Div. 2009)). The plaintiff must make a threshold showing that his claim involved " 'continual *unlawful acts*, not continual *ill effects* from an original violation' " before a court will consider whether the continuing wrong doctrine is available. *Id.* (quoting *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)); *see also Felter v. Norton*, 412 F. Supp. 2d 118, 125 (D.D.C. 2006) ("When courts apply the continuing violation doctrine, the claim will not be barred provided that at least one wrongful act occurred during the statute of limitations period and that it was committed in furtherance of a continuing wrongful act or policy or is directly related to a similar wrongful act committed outside the statute of limitations.").

The Brouillards rely on a number of communications to support their intentional misrepresentation and negligent misrepresentation claims, including a *Uniform Good Faith Estimate of Closing Cost and Truth and Lending Statement* dated October 5, 2006 setting forth the potential terms and conditions for a $500,000 loan with a 30-year fixed annual interest rate of 7.375%, a November 9, 2006 email from FirstBank's loan officer, Andrea Hardy, detailing three financing plan options for disbursement of the anticipated $500,000 loan, and a November 17, 2006 conversation with Andrea Hardy, in which she allegedly assured the Brouillards that the interest rate would be decreased when the second portion of the loan was originated in 2007. The Brouillards argue that they entered into the loan agreement with the expectation that in 2007 FirstBank would fund the second portion of a total loan of $500,000.

---

Two years

(A) An action for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not herein especially enumerated.

■ After the Brouillards inquired about additional funding in February 2007, FirstBank informed them that they would need to complete a new loan application, which the Brouillards never submitted. Moreover, FirstBank denied all attempts by the Brouillards to refinance the terms of the $352,500 loan throughout 2007. By the fall of 2007, the Brouillards knew all of the essential facts that could purportedly give rise to a cause of action against FirstBank. Because the Brouillards had actual knowledge of any alleged misrepresentations by FirstBank regarding additional funding for a construction loan and a modification to their interest rate by the end of 2007, their claims for negligent and intentional misrepresentation are barred. Since the statute of limitations for tort claims is two years, December 2009 was the latest that the Brouillards could timely file their cause of action.

FirstBank did not commence its foreclosure action until April 2011, and the Brouillards did not file their counterclaims until September 17, 2012, which was well outside the two-year statute of limitations. Furthermore, the Brouillards never offered evidence of a continuing violation by FirstBank. Therefore, the Superior Court correctly granted summary judgment in favor of FirstBank on the Brouillards' intentional and negligent misrepresentation counterclaims, and we affirm.

### C. The Superior Court correctly granted summary judgment on the Brouillards contract claims because they were barred by the Statute of Frauds.

■ The Brouillards filed two contract claims against FirstBank in their answer to the motion for summary judgment: breach of the implied covenant of good faith and fair dealing[2] and breach of contract. Both counterclaims rely on the Brouillards' belief that FirstBank had a contractual obligation to provide additional funding in the form of a second loan to be executed in early 2007. The Brouillards allege that FirstBank's failure to provide additional funding has resulted in a breach.

■ To establish a breach of contract claim, the Brouillards must prove that a contract existed, that there was a duty created by that contract, that such duty was breached, and that as a result they suffered damages.

---

[2] Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *See Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013).

*Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 135 (V.I. 2009). We need only address the first element of whether a contract existed in responding to the Brouillards' appeal, because it is dispositive.

While the Brouillards argue the existence of an agreement for a $500,000 loan, FirstBank's standard loan transaction document styled "Statement of Credit Denial, Termination, Change or Counter-Offer" discloses otherwise. FirstBank rejected the Brouillards' application for a $500,000 loan when it stated:

> We are unable to offer you credit on the terms that you requested for the reasons shown in Section I. We will be happy to offer you credit on the following terms: $352,500.00 Fixed Rate RML Amortized over 30 years on 6B-12 St. Quacco Zimmerman, St. John, VI 00803.

In the face of an unequivocal denial for the $500,000 loan, the Brouillards rely on prior communications with FirstBank's loan officer to establish that they had an oral agreement. Yet, even assuming that an oral agreement existed, it is barred by the Statute of Frauds. As codified in the Virgin Islands, the Statute of Frauds, 28 V.I.C. § 244 provides in relevant part:

> In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof is in writing, and subscribed by the party to be charged therewith, or by his lawful agent under written authority:
>
> (1) An agreement that by its terms is not to be performed within one year from the making thereof.
>
> (2) A special promise to answer for the debt, default, or misdoings of another person.

Thus, in the Virgin Islands, any agreement to be performed for a period greater than one year is void and unenforceable under the Statute of Frauds unless it is evidenced by a writing to which the party to be charged with the obligation has subscribed. And, an oral agreement regarding an interest in property for a period greater than one year is void and unenforceable under the Statute of Frauds. *See* 28 V.I.C. § 244(1). Because the original agreement between the parties was for an interest in real property with a 30-year mortgage, the purported agreement is precisely what the Statute of Frauds was created to prevent. Therefore, counts 3 and 4 of the Brouillards' counterclaims are barred by the Statute of Frauds.

## V. CONCLUSION

For the foregoing reasons, we affirm the Superior Court's decision entering summary judgment in favor of FirstBank on its foreclosure action and granting summary judgment to FirstBank on the Brouillards' counterclaims.